# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 21, 2009       Decided June 11, 2010

No. 08-5434

KIRK BENOIT, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01917)

*Ben Whaley Le Clercq* argued the cause and filed the briefs for appellants. *Stephen A. Bogorad* entered an appearance.

*Benjamin M. Shultz*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was *Marleigh D. Dover*, Assistant Director. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Fourteen African American farmers allege the United States Department of Agriculture discriminated against them on the basis of race (and, in one case, gender) in administering the agency's federally funded credit and benefit programs. They assert claims under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* (ECOA); the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*; the common law; and the Fifth and Fourteenth Amendments to the Constitution of the United States. In this appeal we consider not the merits of the plaintiffs' claims but only whether the district court erred by entering summary judgment against the plaintiffs on their claims under the ECOA because they failed to exhaust their administrative remedy or by dismissing the plaintiffs' other claims as barred by sovereign immunity.

## I. Background

The plaintiffs' discrimination claims are decades old and were long ago submitted to the USDA, which never resolved them. At one time the plaintiffs could have sued the USDA under the ECOA, but their claims under that statute were barred by the running of the two-year limitations period. *See* 15 U.S.C. § 1691e(f).

In 1998 the Congress passed legislation reviving ECOA claims of discrimination that had been filed with the USDA from 1981 to 1996 but were barred by the statute of limitations. Section 741 of the Department's 1999 Supplemental Appropriations Act[*] created a two-year window

---

[*] Omnibus Consolidated and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, § 741, 112 Stat. 2681,

within which farmers who had filed such complaints could pursue their claims in court notwithstanding the statute of limitations. Sections 741(a) and (b) each gave affected farmers a distinct option: Either file the claim (a) directly in federal district court or (b) with the USDA and, if the USDA denies the claim, then seek review of the agency decision in district court, as provided in § 741(c). Of course, a farmer who chooses option (a) "forego[es]" option (b), *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009), and *vice versa*, *see* § 714(b) ("The complainant may, in lieu of filing a civil action, seek a determination on the merits [by the USDA]").

The plaintiffs in this case chose option (b) and duly filed their claims, styled "Section 741 Complaint Requests" by the USDA, which considers such matters in two stages. The first is an informal settlement process overseen by the Director of the Office of Civil Rights (OCR). 7 C.F.R. § 15f.9. The Director may consider documents submitted by the complainant, review documents in the Department's files, and refer the case for investigation. *Id.* Ultimately the Director either negotiates a settlement with the complainant or sends him a letter stating that the OCR will not settle the complaint and informing him of his "options, including [the] right to request formal proceedings before an ALJ." *Id.*

Some three to five years after filing their complaint requests, 12 of the present plaintiffs received letters from the Director declining to settle their complaints and informing them of their options. Messrs. Pearson and McDonald, each having waited several years when this suit was filed, had not yet received letters from the Director.

---

2681-30 to -31 (Oct. 21, 1998) (codified at 7 U.S.C. § 2279 Historical and Statutory Notes).

4

The second stage of the USDA's review process begins when a complainant requests a formal on-the-record hearing pursuant to § 741(b)(1). Any complainant may do so at any time after filing a "complaint request" and until 30 days after receiving a letter from the Director of the OCR declining to settle his complaint. 7 C.F.R. §§ 15f.9–.11. The hearing is conducted by an Administrative Law Judge. The Director provides to the ALJ and to the complainant a copy of the complaint file, along with a report stating his position concerning the complaint. *Id.* § 15f.15. The judgment of the ALJ becomes final after 35 days unless either the complainant requests review by the Assistant Secretary for Civil Rights or the Assistant Secretary *sua sponte* decides to review it. *Id.* § 15f.24(a).

The plaintiffs in this case had not requested a formal hearing when they filed this suit in 2003. The Government moved to dismiss their claims under the ECOA for failure to exhaust their administrative remedies and to dismiss their claims for damages under the Civil Rights Act, the APA, the common law, and the Constitution as barred by sovereign immunity. With respect to the claims under the ECOA, because the parties submitted and relied upon materials outside the pleadings, the district court converted the Government's motion to dismiss into a motion for summary judgment, *Benoit v. United States Dep't of Agriculture*, 577 F. Supp. 2d 12, 22–23 (2008), which it granted. *Id.* at 23–26. The court dismissed the other claims for lack of subject matter jurisdiction, holding that the plaintiffs could not invoke the waiver of sovereign immunity for common law tort claims in the Federal Tort Claims Act (FTCA) because they had not satisfied the exhaustion requirement in that statute and that the United States had not waived its sovereign immunity to claims for damages under the Civil Rights Act, the APA, or the Constitution. *Id.* at 26–27.

## II. Analysis

We review *de novo* an order of the district court dismissing a claim for lack of subject matter jurisdiction and a grant of summary judgment. *See Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995). Because we come independently to the same conclusions as did the district court, we affirm the order and judgment in all respects.

### A. Sovereign Immunity

The plaintiffs wisely take no issue with the district court's holding that suits for damages against the United States under the Civil Rights Act, the APA, and the Constitution are barred by sovereign immunity and that suits for damages against the United States under the common law must be brought pursuant to the limited waiver of sovereign immunity in the FTCA, which requires that the claimant have exhausted his administrative remedy before filing suit. *Brookens v. Solis*, 2009 WL 2414420, at *1 (D.C. Cir. 2009); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) ("the United States has not waived its immunity to suit under [§ 1981]"); *Hubbard v. Administrator, EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc) (suit for money damages not within limited waiver of sovereign immunity in APA); *Clark v. Library of Cong.*, 750 F.2d 89, 103–05 (D.C. Cir. 1984) (constitutional claims solely for monetary damages against federal official in his official capacity are barred by sovereign immunity); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies").

The plaintiffs make two attempts to sidestep sovereign immunity by reframing their case on appeal. First, they

contend the exhaustion requirement in the FTCA does not apply to claims challenging agency procedures and, in any event, their failure to exhaust was caused by their counsel's excusable neglect. These arguments are forfeit, however, because the plaintiffs did not raise them in the district court. *See, e.g.*, *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008).

Second, the plaintiffs argue the district court should have granted them leave to amend their complaint to include a prayer for equitable relief because they suggested, in opposing the Government's motion to dismiss, that "if the Court is otherwise inclined to dismiss [the non-ECOA] counts, Plaintiffs should be granted leave to amend these counts." The district court noted their suggestion but declined to grant leave to amend "in the absence of a formal motion." 577 F. Supp. 2d at 27. We review the district court's decision denying the plaintiffs' request for leave to amend for abuse of discretion. *See Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006).

We can hardly say the district court abused its discretion when we have previously held "a request for leave [to amend] must be submitted in the form of a written motion," *Belizan*, 434 F.3d at 582, and Federal Rule of Civil Procedure 7(b) provides the motion must "state with particularity the grounds for seeking the order [and] state the relief sought." The plaintiffs' unwritten, one-sentence, conditional suggestion does neither. *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) (affirming district court's refusal to consider similar one-sentence request, made in opposition to motion to dismiss, for want of "notice to the district court and the opposing party of the basis of the proposed amendment").

B. Failure to Exhaust Administrative Remedy

As noted, the district court entered summary judgment for the Government on the plaintiffs' claims under the ECOA because the plaintiffs did not exhaust their administrative remedy under § 741 by requesting a formal hearing before an ALJ. 577 F. Supp. 2d at 23. On appeal the plaintiffs argue they did not fail to exhaust their administrative remedy or, if they did, then the court should have excused their failure.

1. Did the plaintiffs exhaust?

The plaintiffs say yes because each had filed a § 741 Complaint Request and, with the exception of Messrs. Pearson and McDonald, received a letter from the Director before suing. On this view, the letter was a determination subject to judicial review pursuant to § 741(c).[*] As the district court stated, the plaintiffs' argument "cannot be squared with the language and structure of the regulations" implementing § 741. 577 F. Supp. 2d at 24.

The Director's letter is not judicially reviewable because § 741(c) provides for judicial review only insofar as a claim is

---

[*] The plaintiffs also suggest a hearing before an ALJ was merely an optional appeal they were free to take or to leave under *Darby v. Cisneros*, 509 U.S. 137, 147 (1993). In that case the Court explained that § 704 of the APA "by its very terms" prevents a court from requiring a party to exhaust his optional administrative appeal in order to bring an APA challenge to final agency action unless exhaustion is mandated by a statute or a rule. *Id.* at 146. That case is doubly inapplicable here: the plaintiffs' suit is under § 741(c), not under the APA, *see Darby*, 509 U.S. at 153 ("the exhaustion doctrine continues to apply as a matter of sound judicial discretion in cases not governed by the APA"), and as the plaintiffs concede, § 741 requires exhaustion, Oral arg. at 8:45.

"denied administratively." The letter does not do that; it merely informs the complainant of the Director's decision not to negotiate a settlement. 7 C.F.R. § 15f.9. A decision to deny a complaint can be issued only to a claimant who requested a formal hearing. 7 C.F.R. §§ 15f.9–.16. Therefore, in order to exhaust their administrative remedy the plaintiffs would have had to request a formal hearing before an ALJ. Although they could have done so at any time after they filed their complaints with the OCR and for 30 days after receiving notice of the Director's decision, the plaintiffs filed this suit without first having requested a formal hearing. Their failure to exhaust that administrative remedy bars judicial review of their claims under the ECOA unless, as they argue, the court has, and it is appropriate in this case to exercise, discretion to excuse that omission.

2. Is the plaintiffs' failure to exhaust excusable?

The plaintiffs argue it is because, quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992), their "interests in immediate judicial review outweigh the government's interests in the efficiency and administrative autonomy that the exhaustion requirement is designed to further." According to the Government, however, we lack the power to excuse exhaustion and, in any event, doing so is not warranted in this case.

The parties agree both that § 741(c) implicitly requires exhaustion[*] and that the plaintiffs' failure to exhaust did not deprive the district court of jurisdiction. What they dispute is whether exhaustion in this case is "mandatory" — either by

---

[*] Section 741(c) provides: "if an eligible claim is denied administratively, the claimant shall have at least 180 days to commence a cause of action in a Federal court of competent jurisdiction seeking review of such denial."

virtue of § 741 or by virtue of 7 U.S.C. § 6912(e),[**] which requires exhaustion in suits against the USDA generally, *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 579 (D.C. Cir. 2007) — and, if so, whether the court can excuse these plaintiffs' failure to exhaust. *See id.* (even "a mandatory exhaustion requirement may be excused in appropriate circumstances, whereas a jurisdictional exhaustion requirement never may be excused by a court") (dictum). Furthermore, if exhaustion is mandatory in this case, then the court's power to excuse the plaintiffs' failure to exhaust may be more limited, as the Government suggests, than is our power to excuse compliance with a non-mandatory exhaustion requirement. *See McCarthy*, 503 U.S. at 144 ("Of paramount importance to any exhaustion inquiry is congressional intent" (internal quotation marks omitted)).

Interesting as these issues are, we can decide this case without resolving them. For even if we have discretion to excuse a plaintiff's failure to exhaust their administrative remedy, a balancing of interests pursuant to *McCarthy v. Madigan* does not support our doing so in this case.

First, as the district court pointed out, the Government has a significant interest in having the plaintiffs exhaust their administrative remedy. 577 F. Supp. 2d at 23 n.16. The process of review within the USDA gives the Department "the opportunity 'to correct its own errors,'" *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 155 (D.C. Cir. 2006) (quoting *McCarthy*, 503 U.S. at 145), and thereby to avoid unnecessary litigation. Even if litigation is not avoided, the formal hearing

---

[**] Section 6912(e) of 7 U.S.C. provides "a person shall exhaust all administrative appeal procedures . . . before the person may bring an action . . . against (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department."

before an ALJ "may produce a useful record for subsequent judicial consideration." *McCarthy*, 503 U.S. at 145–46.

There are, to be sure, limited circumstances "in which the interests of the individual [plaintiff] weigh heavily against requiring administrative exhaustion" and in favor of immediate judicial review. *Id.* at 146–47. The Supreme Court has identified at least three such circumstances — where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," or there is "some doubt as to whether the agency was empowered to grant effective relief," or "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–149.

The present plaintiffs allege none of these circumstances; instead they stress the importance of their cause, involving as it does allegations of "unlawful racial discrimination in violation of their constitutional, statutory, and common law rights," Br. of Appellants at 28, and the history of "undue delay" in the USDA's handling of their Complaint Requests.

That the plaintiffs' interest in redressing the harm allegedly done them by racial discrimination is weighty and comes squarely within the zone of interests protected by the ECOA is undoubtedly true. Those features of the case, however, do not evidence "the litigant's interests in immediate judicial review" of the sort considered in *McCarthy*. 503 U.S. at 147, *citing Bowen* v. *City of New York*, 476 U.S. 467, 483 (1986) (disability benefit claimants "would be irreparably injured were the exhaustion requirement now enforced against them"). The weight or intensity of a plaintiff's interest in his cause might in some circumstances indicate that exhaustion would prejudice the plaintiff or be unproductive, but in this case the plaintiffs'

failure to request a formal hearing at any point during the administrative settlement process indicates the opposite.

Furthermore, there is neither logical nor empirical support for the plaintiffs' suggestion a formal hearing, had they elected to have one, would not have proceeded expeditiously. Logically, the Director of the OCR's delay of several years before responding to the plaintiffs' complaints is irrelevant; the plaintiffs could have opted for a formal hearing before an ALJ at any time while their claims were pending before the Director but, except Messrs. Pearson and McDonald, who requested review by an ALJ since filing this suit, they chose instead to wait. They suggest no other reason to think a formal hearing would not have proceeded expeditiously.

Empirically, the agency's response when Messrs. Pearson and McDonald filed their requests for review by an ALJ belies the plaintiffs' claim. According to a post-argument letter the Government submitted pursuant to Federal Rule of Appellate Procedure 28(j), the accuracy of which plaintiffs have given us no reason to doubt, within a few months of Pearson's and McDonald's requests for a hearing an ALJ was assigned to their cases and pre-hearing conferences were scheduled.

We conclude the district court properly granted summary judgment in favor of the Government on the plaintiffs' claims under the ECOA because they failed to exhaust their administrative remedy. Applying the criteria prescribed by the Supreme Court in *McCarthy*, that failure is not excusable.

### III. Conclusion

The district court properly dismissed for lack of subject matter jurisdiction the plaintiffs' claims arising under the

Civil Rights Act, the APA, the common law, and the Constitution. The district court also properly granted summary judgment for the Government with respect to their claims under the ECOA, because the plaintiffs failed to exhaust the administrative remedy provided in § 741. The judgment of the district court is in all respects, therefore,

*Affirmed.*