# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 16, 2013          Decided July 8, 2014

No. 12-1095

ELAINE JOAN MITTLEMAN,
PETITIONER

v.

POSTAL REGULATORY COMMISSION,
RESPONDENT

UNITED STATES POSTAL SERVICE,
INTERVENOR

---

Consolidated with 12-1110, 12-1157

---

On Petitions for Review of Orders
of the Postal Regulatory Commission

---

*Elaine J. Mittleman* argued the cause and filed the briefs for petitioners.

*Abby C. Wright*, Attorney, U.S. Department of Justice, argued the cause for respondent. On the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Ronald C. Machen*, *Jr.*, U.S. Attorney, *Michael S. Raab* and *Jeffrey E. Sandberg*, Attorneys, *Stephen L. Sharfman*, General Counsel,

Postal Regulatory Commission, and *R. Brian Corcoran*, Deputy General Counsel.

Before: GARLAND, *Chief Judge*, SRINIVASAN, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: The petitioners in these consolidated cases do not want their local post offices closed. They unsuccessfully opposed the closures of the three post offices at issue by the United States Postal Service, unsuccessfully appealed the Postal Service's determinations to the Postal Regulatory Commission, and now seek review of the Commission's decisions in this court. Because one of the petitions has become moot, and because the other two involve Commission decisions that are not subject to judicial review, their current effort is likewise unsuccessful.

I

The Postal Reorganization Act Amendments of 1976 created a series of procedural steps that the United States Postal Service must follow before "closing or consolidat[ing]" a post office. Pub. L. No. 94-421, § 9(a), 90 Stat. 1303, 1310-11 (codified as amended at 39 U.S.C. § 404(d)). Before making a determination to close or consolidate, the Postal Service must give adequate notice to those served by the post office to ensure that they have an opportunity to present their views. *Id.* § 404(d)(1). The Postal Service must also consider a list of factors set out in the statute. *Id*. § 404(d)(2)(A)(i)-(v). If the Postal Service decides to close or consolidate, it must commit its decision, including its findings regarding the listed factors, to writing and make that decision publicly available. *Id.* § 404(d)(3). "A determination of the Postal Service to close or

consolidate any post office may be appealed by any person served by such office to the Postal Regulatory Commission." *Id.* § 404(d)(5).[1]

These consolidated cases involve challenges to the planned closures of three postal facilities: the Pimmit Branch in Fairfax County, Virginia; the Venice Post Office in Venice, California; and the Spring Dale Post Office in Spring Dale, West Virginia.

On January 7, 2010, the Postal Service notified customers of the Pimmit Branch that services might be discontinued in light of the recent opening of a new, larger post office less than two miles away. After seeking and receiving comment, the Postal Service made a final determination to close the branch and did so on November 10, 2011. Petitioner Elaine Mittleman appealed that determination to the Postal Regulatory Commission, contending, inter alia, that the Postal Service failed to follow the proper procedures for closure. The Commission reasoned that, under its precedents, it did not have jurisdiction to hear the appeal because the relocation of postal services from the Pimmit Branch to another nearby facility was not a "closure" (or a "consolidation")[2] within the meaning of the statute.

---

[1] The 2006 Postal Accountability and Enhancement Act established the Postal Regulatory Commission as "an independent establishment of the executive branch." Pub. L. No. 109-435, § 601(a)(1), 120 Stat. 3198, 3238 (2006) (codified at 39 U.S.C. § 501). It is the successor to the Postal Rate Commission, which had substantially the same review authority under the Postal Reorganization Act Amendments of 1976. *See* Pub. L. No. 94-421, § 9(b)(5), 90 Stat. at 1310-11 (codified at 39 U.S.C. § 404(b)(5) (1976)).

[2] The petitioners did not contend below, nor do they now, that any of the contested determinations involved "consolidations" under 39 U.S.C. § 404(d)(5). The Commission interprets a "consolidation" to

According to the Commission's interpretation of 39 U.S.C. § 404(d)(5), a closure subject to its review occurs only when the Postal Service "eliminat[es] . . . facilities" within a community. PRC Order No. 1159, Docket No. A2011-90, at 11 (Pimmit Branch, Falls Church, VA) (Jan. 20, 2012). Because the Postal Service moved the services provided by Pimmit Branch to another close-by facility in the same area, its action was not a closure but rather a "rearrangement[] of postal facilities within a community." *Id.* at 10, 12.

On April 26, 2011, the Postal Service advised the public that it was considering closing and selling the Venice Post Office building and moving its services 400 feet across the street to what had been an annex facility. On July 18, following a five-week comment period, the Postal Service announced that it had decided to close the post office. Petitioners Venice Stakeholders Association and Mark Ryavec (now joined by a number of other concerned individuals and the Free Venice Beachhead newspaper) appealed the determination to the Postal Regulatory Commission, arguing that closure would severely reduce or temporarily eliminate the availability of postal services to the community. As in the Pimmit Branch case, the Commission dismissed the appeal for lack of jurisdiction because it found that the Postal Service's "relocation" of the facility was not a "clos[ure]" within the meaning of 39 U.S.C. § 404(d)(5). PRC Order No. 1166, Docket No. A2012-17, at 8-9 (Venice Post Office, Venice, CA) (Jan. 24, 2012).

On March 18, 2011, the Postal Service distributed questionnaires to customers of the Spring Dale Post Office

---

involve "management, not facilities" -- that is, "replacing postmasters with officers-in-charge who are subordinate to postmasters in larger communities." PRC Order No. 436, Docket No. A82-10, at 8-9 (Oceana Station, Virginia Beach, VA) (June 25, 1982).

concerning a possible decision to close that post office. On April 6, the Postal Service held a community meeting concerning possible closure, followed by a two-month comment period. On October 21, 2011, the Postal Service posted its final determination to close the Spring Dale Post Office, citing the office's vacant postmaster position, financial concerns, and the minimal effect the closure would have on the community. Petitioner Paul McClung (later joined by other affected individuals) filed an appeal with the Postal Regulatory Commission, alleging faulty reasoning on the part of the Postal Service as well as failure to comply with the proper procedures. After considering the merits of the challenge, the Commission divided 2-2 regarding the closure of the Spring Dale Post Office, which under Commission practice had the effect of affirming the Postal Service's determination. PRC Order No. 1262, Docket No. A2012-68, at 2 n.4 (Spring Dale Post Office, Spring Dale, WV) (Feb. 27, 2012).

In February and March 2012, the petitioners filed the petitions now before us, contending that they are entitled to judicial review of the Commission's decisions and seeking reversal and remand of those decisions.

II

We begin by considering whether any of the petitioners' challenges have become moot during the course of this litigation. "In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (internal quotation marks omitted). This can happen when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Id.* (internal quotation

marks omitted). When a case is moot, a federal court is without jurisdiction to decide it. *Id.*

On April 11, 2013, the Postal Service informed customers of the Spring Dale Post Office that it had decided to keep that office open, albeit with reduced hours. *See* Letter from David C. Belt, Attorney, U.S. Postal Service to Mark J. Langer, Clerk of Court, D.C. Circuit, at attach. (Oct. 11, 2013). The Postal Service has advised us that this action has "the practical effect of rescinding" its 2011 decision to close the post office, and that, "in the event that the Postal Service later initiates a discontinuance action and decides to close" the office again, it will "comply with the process set forth in 39 U.S.C. § 404(d)." *Id.* at 1. Accordingly, because the petitioners in the Spring Dale case have received all the relief they sought, their petition is moot and must be dismissed. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *Conservation Force*, 733 F.3d at 1204.

The Postal Regulatory Commission acknowledges that the petitions regarding the two other post offices are not moot. Oral Arg. Recording at 29:37-30:53. Although the Postal Service no longer occupies the buildings that housed the Pimmit Branch and Venice Post Office, the Commission represents that, if this court were to set aside and remand the challenged decisions, the Postal Service may be able to offer the petitioners some relief. *Id.* Accordingly, we must proceed to address the remaining two petitions.

III

Citing the Administrative Procedure Act (APA), the petitioners ask us to "hold unlawful and set aside" the Postal Regulatory Commission's final decisions because they are "'arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law.'" Pet'rs' Br. 25 (quoting 5 U.S.C. § 706(2)(A)). The problem for the petitioners is that the same provision of the Postal Reorganization Act Amendments that grants the *Commission* authority to review "[a] determination of the Postal Service to close or consolidate any post office," 39 U.S.C. § 404(d)(5), withdraws the authority that the APA would otherwise grant a *court* to review the Commission's review.

Section 404(d)(5) provides that "[t]he Commission shall review" a determination to close or consolidate a post office and "shall set aside any determination" of the Postal Service that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 39 U.S.C. § 404(d)(5). But this provision also declares that "chapter 7 of title 5 shall not apply to any review carried out by the Commission under this paragraph." *Id.* Chapter 7 of title 5 of the United States Code, titled "Judicial Review," is the part of the APA that provides a cause of action for judicial review. *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006); *see Bond v. United States*, 131 S. Ct. 2355, 2363 (2011). The chapter entitles a person aggrieved by agency action to "judicial review thereof," 5 U.S.C. § 702, and provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review," *id.* § 704. It also authorizes a reviewing court to "hold unlawful and set aside agency actions . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706, precisely the relief that the petitioners seek here. Accordingly, by declaring that the judicial review chapter "shall not apply" to a review carried out by the Commission, Congress has precluded this court from examining the Commission's handiwork under the APA.

The petitioners maintain that the phrase, "chapter 7 of title 5 shall not apply to any review carried out by the Commission

under this paragraph," merely means that chapter 7 does not impose any requirements on the Commission's *own* review of a closure.[3]  But none of the provisions of chapter 7 imposes any requirements on an agency's own decisions.  Rather, they all refer to aspects of *judicial* review.  *See id.* § 702 (right of "judicial review"); *id.* § 703 (form and venue of "proceeding for judicial review"); *id.* § 704 (kinds of agency actions "subject to judicial review"); *id.* § 705 (relief that a "reviewing court" may issue "pending judicial review"); *id.* § 706 (scope of review by "the reviewing court").[4]

---

[3]The petitioners do not argue that § 404(d)(5)'s preclusion of APA review is inapplicable because the Commission found that the Postal Service actions at issue here involved "rearrangements" or "relocations" rather than closures.  *See* Oral Arg. Recording at 7:45-9:40.  The Commission's view is that the phrase "chapter 7 of title 5 shall not apply to any review carried out by the Commission under this paragraph," 39 U.S.C. § 404(d)(5), encompasses "any review" by the Commission, including one that results in a determination that there was no closure and thus that the paragraph does not apply.  We need not resolve the question, however, because the petitioners did not raise it.  *Cf. Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) (noting that, because "[t]he judicial review provisions of the APA are not jurisdictional," issues regarding them can "be waived by the parties").

[4]There are other provisions of the APA that do apply to an agency's own decisionmaking.  They are contained in chapter 5 of title 5, which is titled "Administrative Procedure."  *See* 5 U.S.C. §§ 551-58.  Indeed, the sentence in 39 U.S.C. § 404(d)(5) upon which we have been focusing states in full:  "*The provisions of section 556, section 557,* and chapter 7 of title 5 shall not apply to any review carried out by the Commission under this paragraph."  39 U.S.C. § 404(d)(5) (emphasis added).  The italicized sections impose procedural requirements on certain kinds of agency hearings. Section 404(d)(5) renders those requirements, like the chapter on judicial review, inapplicable to the Commission's review of Postal Service

The conclusion that § 404(d)(5) precludes judicial review under the APA is supported by precedent regarding an analogous statutory section. That section, 39 U.S.C. § 410(a), provides that "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, *including the provisions of chapter[] . . . 7 of title 5*, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a) (emphasis added). As a consequence, we have observed that "the Postal Service is exempt from review under the Administrative Procedure Act." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. (2012); *see Carlin v. McKean*, 823 F.2d 620, 622-23 (D.C. Cir. 1987); *Nat'l Easter Seal Soc'y for Crippled Children & Adults v. U.S. Postal Serv.*, 656 F.2d 754, 766-67 (D.C. Cir. 1981). Other circuits have reached similar conclusions regarding the effect of § 410(a). *See Currier v. Potter*, 379 F.3d 716, 725 (9th Cir. 2004); *Booher v. U.S. Postal Serv.*, 843 F.2d 943, 945 (6th Cir. 1988); *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1155 (4th Cir. 1988).[5]

The conclusion that § 404(d)(5) precludes judicial review of Commission decisions regarding closures and consolidations under the APA is confirmed by the legislative history of the section. The debates surrounding the Postal Reorganization Act Amendments included a disagreement about the appropriate amount of process to give to persons aggrieved by the closure of their local post office. The Senate version included judicial review in the United States Courts of Appeals, while the House

---

determinations to close or consolidate post offices.

[5]In *Air Courier Conference of America v. American Postal Workers Union*, the Supreme Court declined to decide whether § 410(a) exempts the Postal Service from judicial review under the APA because the issue was not encompassed in the Court's grant of certiorari. *See* 498 U.S. at 522-23.

version contained no review provision at all, leaving the determination entirely in the hands of the Postal Service. H.R. Rep. No. 94-1444, at 18 (1976) (Conf. Rep.). Taking a middle ground, the Conference Committee adopted the Senate provision, "except that the right of appeal to a United States court of appeals is deleted and *instead* there shall be a right of appeal to the Postal Rate Commission" -- the predecessor to the Postal Regulatory Commission. *Id.* (emphasis added). This result appears to have been intended to strike a balance between providing protection for postal patrons and ensuring the efficiency of postal operations.

The petitioners contend that, even if § 404(d)(5) precludes APA review of Commission decisions regarding closures and consolidations, another provision of title 39 nonetheless authorizes it. That provision is § 3663, which states: "A person, including the Postal Service, adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may . . . institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia. The court shall review the order or decision in accordance with section 706 of title 5 . . . ." 39 U.S.C. § 3663.[6]

Were it not for § 404(d)(5), section 3663 would indeed appear to authorize APA review of *all* final decisions of the Commission. But given that § 404(d)(5) precludes APA review

---

[6]Section 3663 also provides that review shall be in accordance with "chapter 158 and section 2112 of title 28." *Id.* Chapter 158 is commonly known as the Hobbs Act. "While the Hobbs Act specifies the form of proceeding for judicial review of ICC orders, *see* 5 U.S.C. § 703, it is the Administrative Procedure Act (APA) that codifies the nature and attributes of judicial review." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987). Section 2112 governs the record on review and enforcement of agency orders. 28 U.S.C. § 2112.

of Commission decisions regarding closures and consolidations, we must attempt "to harmonize and give meaningful effect to" these seemingly contradictory provisions. *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 680 (2010); *see Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 678-79 (2007). This can readily be accomplished by employing the "well established canon of statutory interpretation . . . that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012). As the Court explained in *RadLAX*, "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *Id.* at 2071. Here, the general permission of judicial review under the APA granted by § 3663 is contradicted by the specific prohibition of § 404(d)(5). Harmonization is achieved by reading § 3663 as authorizing judicial review for the broad run of Commission decisions, with the specific exception that § 404(d)(5) establishes for decisions regarding closures and consolidations.

The fact that § 3663 was enacted in 2006 as part of the Postal Accountability and Enhancement Act (PAEA), while the section that is now § 404(d)(5) was part of the earlier Postal Reorganization Act Amendments of 1976, does not change our conclusion. As the Supreme Court said in *National Association of Home Builders v. Defenders of Wildlife*:

> While a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision . . . , repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal [is] clear and manifest. We will not infer a statutory repeal unless the later statute

expressly contradict[s] the original act or unless such a construction is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all.  Outside these limited circumstances, a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.

551 U.S. at 662-63 (internal quotation marks omitted).  There is nothing in the text of the general review provision of § 3663 that communicates a "clear and manifest" intention to repeal the limitation that § 404(d)(5) imposed on review of Commission decisions regarding post office closures and consolidations.  The text does not even mention § 404(d)(5), let alone "expressly" contradict it.  And such a construction is not necessary to give the words of § 3663 "any meaning at all," as those words provide a right of review for the broad run of Commission decisions that do not cover the "narrow, precise, and specific subject" of post office closures and consolidations.

Nor is there anything in the history of PAEA to indicate that Congress intended § 3663 to repeal the judicial review limitation of § 404(d)(5).  To the contrary, PAEA made numerous changes to other provisions of  § 404,[7] including striking and revising a

---

[7]For example, PAEA inserted new subsections 404(b) and (c), which contained provisions regarding classes of mail and rates of postage.  *See* PAEA § 1010(e), Pub. L. No. 109-435, 120 Stat. 3198, 3261-62 (2006).  (At the same time, it redesignated subsections 404(b) and (c) as (d) and (e), respectively.  *Id.*)  PAEA also inserted new rules for determining the date upon which an appeal from a Postal Service closure decision is considered "received by" the Commission.  *See id.* § 1006(a), 120 Stat. at 3258 (codified at 39 U.S.C. § 404(d)(6)).  In addition, PAEA substituted the Postal Regulatory Commission for the Postal Rate Commission throughout the statute, including in § 404(d) as the entity authorized to review Postal Service determinations to

provision of that section.[8]  It also struck many other provisions of the Postal Reorganization Act as that Act stood in 2006.[9] Nonetheless, Congress left completely intact the provision of § 404(d)(5) that precludes APA review of Commission decisions regarding post office closures and consolidations.  Accordingly, we find no indication of a congressional intention to repeal § 404(d)(5)'s elimination of APA review, let alone a "clear and manifest" intention.

Finally, we acknowledge that the absence of a cause of action for judicial review under the APA does not necessarily foreclose all judicial review.  *See Trudeau*, 456 F.3d at 184 & n.5, 188-90 (noting that, where review is precluded under the APA, other causes of action may still be available).[10]  As we said in *Trudeau v. FTC*, even when "'a plaintiff is unable to

---

close post offices.  *See id.* § 604(a), 120 Stat. at 3241.  It made many other additions to § 404 as well.  *See id.* § 102, 120 Stat. at 3200; *id.* § 403(b)(2), 120 Stat. at 3227.

[8]PAEA § 102, 120 Stat. at 3200 (striking a subsection that authorized the Postal Service to provide nonpostal services and replacing it with a subsection that significantly limits its ability to do so).

[9]*See, e.g.*, PAEA § 201, 120 Stat. at 3200-05 (striking what were then 39 U.S.C. §§ 3621-22 and replacing them with new language); *id.* § 205, 120 Stat. at 3216-17 (striking what was then 39 U.S.C. § 3662 and replacing it with new language); *id.* § 404, 120 Stat. at 3227-29 (striking some subsections of 39 U.S.C. § 409 and replacing them with new language).

[10]*See also Air Courier Conference of Am.*, 498 U.S. at 523 n.3 ("The judicial review provisions of the APA are not jurisdictional . . . . Whether § 410(a) exempts the Postal Service from APA review is in essence a question whether Congress intended to allow a certain cause of action against the Postal Service.").

bring his case predicated on either a specific or general statutory review provision, he may still be able to institute a non-statutory review action.'" *Id.* at 189 (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322,1327 (D.C. Cir. 1996)). Indeed, we have found such "non-statutory" review available for certain Postal Service decisions, notwithstanding the preclusion of APA review under 39 U.S.C. § 410(a). *See N. Air Cargo*, 674 F.3d at 858; *Aid Ass'n for Lutherans*, 321 F.3d at 1172-73.

But while such review may be available, it is quite narrow. It is available only to determine whether the agency has acted "ultra vires" -- that is, whether it has "exceeded its statutory authority." *Aid Ass'n for Lutherans*, 321 F.3d at 1173; *see N. Air Cargo*, 674 F.3d at 858; *Trudeau*, 456 F.3d at 190; *cf. Leedom v. Kyne*, 358 U.S. 184, 188 (1958) (concluding that judicial review of an NLRB order was available, notwithstanding that the challenged order did not come within the judicial review provision of the National Labor Relations Act, because the NLRB's order was "made in excess of its delegated powers and contrary to a specific prohibition in the Act [that] is clear and mandatory"). Here, however, the petitioners do not contend that the Commission exceeded the scope of its statutory authority in dismissing their appeals regarding the Pimmit Branch and the Venice Post Office. If anything, they contend that the Commission did precisely the opposite: that it improperly constrained its own authority by finding that it did not have jurisdiction to hear the cases. Accordingly, neither APA review nor non-statutory review of the Commission's decisions is available.

IV

For the foregoing reasons, the petition regarding the Spring Dale Post Office is dismissed as moot, and the petitions

regarding the Pimmit Branch and the Venice Post Office are denied.

*So ordered.*